Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 5167 | **DATE** | 10/25/2011 |
| **CASE TITLE** | Gloria M. Macias vs. United Parcel Service, Inc. | | |

**DOCKET ENTRY TEXT**

Defendant's motion for summary judgment [53] is granted.

■ [ For further details see text below.]                                                                 Docketing to mail notices.

# STATEMENT

**Introduction.** This is a gender discrimination lawsuit brought by a current employee of defendant United Parcel Service, Inc. ("UPS"). Gloria Macias began working for UPS in 1987. She was hired as an administrative employee, and then became a package car driver in 1990 and then was promoted to supervisor in various departments, such as human resources. In February 2006, Macias moved from the company's Chicago office to the company's Northbrook facility where she worked as an "on-road" supervisor. She was responsible for supervising and training tractor-trailer drivers. In October 2008, she moved back to Human Resources where she is still working as a full-time supervisor. This lawsuit focuses on the two-and-a-half year period when Macias worked in the Northbrook office as an on-road supervisor.

Plaintiff filed her complaint *pro se*. This Court later appointed counsel who filed an amended complaint asserting a single claim for gender discrimination under Title VII of the Civil Rights Act of 1964, 42. U.S.C. §§ 2000e *et seq*. The claim is broken down into the following four major allegations: (a) UPS failed to give Macias a merit increase in March 2007; (b) UPS failed to reimburse her for tuition payments; (c) UPS refused to award her a stock bonus later in 2007; and (d) UPS exposed her to an abusive work environment in which she was (among other things) given wrong directions to accounts, excluded from "male only" meetings, given a larger work load, and required to work longer and later hours. (Am. Cmplt. ¶ 13.a-d.)

**Summary of Arguments.** Now before the Court is UPS's motion for summary judgment. In its opening brief, UPS takes plaintiff's four allegations and reduces them to three by combining the two pay claims (subpart (a) and (c)) into one allegation for purposes of analysis. UPS then argues why each of the three major allegations is insufficient to survive summary judgment.

*First*, UPS argues that plaintiff did not receive the two bonuses in 2007 because she failed to "pull a load" on February 6, 2007 when asked by her supervisor. On that day, plaintiff came to work and was asked to conduct an annual safety ride with a driver going to and from Kalamazoo, Michigan. UPS supervisors are required to conduct a safety ride once a year in which they have to drive a trailer (known as "pulling a load") for at least one hour. Plaintiff told her supervisor Russell Kess that she could not drive because she was not

road worthy. She had worked 15 hours the previous day and, although she had the required 12 hours off, she spent the time dealing with a car problem and thus was unable to get enough sleep. She also said she was recovering from strep throat. Kess offered to let her drive a shorter route to Rockford, Illinois but plaintiff still felt it would be unsafe. Eventually Kess told her to go home because she came to work unprepared. UPS claims that plaintiff was denied the two bonus payments because of her refusal to pull a load on February 6th, and that it was not because UPS was trying to discriminate against women.

*Second*, UPS argues that it denied plaintiff's tuition reimbursement request based on a neutral company-wide policy. In 2006, UPS established a lifetime $25,000 cap on tuition reimbursement for each employee. Because UPS had previously paid plaintiff $34,971.14 in tuition reimbursements, it denied her request for the additional two courses she was taking. Again, UPS claims that its decision was based on legitimate business reasons and not on gender bias.

*Third*, UPS argues that plaintiff's hostile environment claim fails because the list of alleged discriminatory acts and comments do not collectively meet the severe or pervasive standard for a Title VII claim. UPS in its opening brief specifically addresses each of the specific incidents and comments and argues that they are either time-barred, ambiguous, inconsequential, or unsupported by the evidence.

Plaintiff in her response brief begins by identifying what she believes is "her most explicit manifestation of discrimination; to wit, unequal pay." (Resp. at 2.) In making this argument, plaintiff seems to be making a broader claim than simply complaining about the failure to pay the two bonuses in 2007. (She also adds a separate legal theory, asserting a claim under the Equal Pay Act in addition to Title VII.) Plaintiff's unequal pay argument relies primarily on a table comparing her 2007 and 2008 salary with those of four male supervisors who were also Grade 14 employees. Plaintiff particularly complains about her pay in relation to Stephen Godawa and Davis Moreno who both worked in the Northbrook office with plaintiff. In 2007, plaintiff made $63,153 while Moreno made $71,286 and Godawa made $88,777. Plaintiff believes she was preforming the same work as these men, and even had higher educational degrees than they did. What is unclear in her argument is whether the pay differential for 2007 would be accounted for if plaintiff had received the two discretionary bonuses or whether the difference relates to earlier pay decisions going back well before 2007.

As for the February 6th incident, plaintiff believes it is a pretext to cover up the real motive of gender discrimination. She offers two reasons why she believes this is true. First, if the incident was considered important, UPS should have given her "a Memo or written reprimand from either her immediate supervisor or the district managers concerning the incident." (Pl. Resp. Br. at 7.) Second, UPS has a rating system known as Quality Performance Reviews and her QPR score was the same as, or close to the same as, Moreno and Godawa for year 2007.

The tuition reimbursement allegation is not addressed in plaintiff's response brief. The only reference to it is one mention on page 11 of her brief, but she does not make any attempt to explain why this facially neutral policy was discriminatory. She has not pointed to any other employee who received tuition after exceeding the cap, nor has she pointed to any comments or other evidence suggesting the policy was applied to her in way different from others.

As to her third allegation, which she labels as a "hostile environment claim," plaintiff argues that it should be analyzed under a disparate treatment framework and the indirect burden-shifting method of *McDonnell-Douglas*. She then argues that she can easily meet the first three requirements -- she was a member of the protected class (women); she was performing her job as expected based on her performance evaluations; and the male supervisors in the office were treated more favorably. The fourth requirement is that she show that she was subject to an adverse employment action. She concedes that none of the specific acts alleged in her complaint -- *e.g.* being excluded from meetings or given wrong directions to accounts -- is enough to constitute an adverse action by itself. She argues that they should be viewed collectively as an adverse action.

In its reply brief, in addition to reiterating points made previously, UPS argues that plaintiff cannot

| STATEMENT |
|---|

assert an Equal Pay Act claim because her amended complaint never included such a claim. UPS also argues that any pay differential not attributable to the failure to pay the two bonuses was due to the difference in seniority between plaintiff and the four men and due to the fact that the four men spent more time in operations, an area where workers are generally paid more than in non-operations departments because of the importance of operations to UPS's overall business.

**Analysis.** Having reviewed these arguments, we grant summary judgment in favor of defendant UPS. Two initial points. First, because plaintiff has not offered any argument on her tuition reimbursement claim, she has waived this claim, and we therefore will not analyze it further. There is simply no evidence we can find in the record to suggest the policy was discriminatory. Second, we agree with UPS that plaintiff cannot add an Equal Pay Act claim now, simply by asserting such a claim in her response brief, because she failed to include this claim in her amended complaint nor did she move to file a second amended complaint. We therefore analyze her allegations under Title VII. As recently summarized by the Seventh Circuit, a plaintiff pursuing a Title VII claim may proceed under either the direct or indirect method. *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 586-87 (7th Cir. 2011). "Direct evidence is something close to an explicit admission by the employer that a particular decision was motivated by discrimination; this type of evidence is rare." *Id.* at 587. The other and more common method is circumstantial evidence. The Seventh Circuit has identified three types of circumstantial evidence: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside the group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* Plaintiff has conceded that she has no direct evidence. She therefore must rely on the indirect method.

**The Pay Claims.** As noted above, plaintiff initially focused only on the failure to pay the two bonuses in 2007, but now appears to be making a more general claim about her pay, perhaps including decisions made years before 2007. Putting aside any limitations issues, which plaintiff did not address in her brief, such a broader claim would fail because UPS has offered two non-discriminatory reasons -- seniority and time spent in operations vs. non-operations -- to account for the difference. When these two factors are applied to plaintiff's table, the differences in salary make sense. Consider for example Stephen Godawa who made the highest 2007 salary. He began working for UPS in 1974, thirteen years before plaintiff. Moreover, unlike plaintiff who spent considerable time in other departments, Godawa *always* worked in the higher-earning operations department. In fact, if you rank the five individuals on Table A from highest to lowest pay, it correlates exactly to those with the longest to the shortest service. Godawa has the most seniority and the most pay while plaintiff had the least seniority and the least pay. Moreover, while there is a differential between plaintiff and the four men, there is also a wide differential *among* the four men Godawa and Schillo were paid significantly more than Moreno. Thus, gender bias could not explain this difference. Finally, according to plaintiff's table, the salary disparity was significantly reduced in year 2008 when plaintiff received bonuses, thus suggesting that the 2007 pay difference was attributable to the failure to pay bonuses. In 2008, plaintiff's salary was higher, albeit by a tiny amount, than Moreno's salary. It is true that Macias had higher educational degrees, but UPS states that no additional pay is given for such degrees once the employee has reached, as had Macias, the pay grade of 14. This point was not disputed by plaintiff. (*See* Pl. Resp. to Def. Fact 68.) In sum, plaintiff has not offered evidence to cast doubt on UPS's explanation.

Turning back to the two bonus pay decisions, UPS argues they were justified by plaintiff's failure to pull a load on February 6th. This incident is a key point in contention in this lawsuit. UPS notes, correctly, that the facts are not in dispute. UPS has a policy requiring supervisors like plaintiff to pull a load when asked and plaintiff refused to drive when requested. Plaintiff concedes she violated the rule but argues the violation was a minor infraction and one understandable given her personal situation in which she failed to get enough sleep for various reasons. Plaintiff believes UPS did not view the incident as anything serious because it did not give her a written reprimand and because her QPR rating for 2007 was nearly the same as Moreno's and Godawa's rating. In response, UPS states that it "generally does not provide management

employees with written reasons for not awarding bonuses or merit increases." (Reply at 6.) This point is undisputed. UPS also argues that the quality performance review rating for 2007 was only one of several factors for determining whether she received a merit increase payable in the following year (and not during 2007, as is the issue here) and that she in fact did receive such an increase in March 2008. (*Id.*)

Considering these arguments, we find that plaintiff has not offered evidence from which a reasonable jury could conclude the decisions were pretextual. It is important to remember, as the Seventh Circuit has consistently emphasized, that courts should not "sit as a super-personnel department" questioning the rightness or wrongness of company policies. *O'Leary v. Accretive Health, Inc.*, __ F.3d __, 2011 WL 4375684, *12 (7th Cir. Sept. 21, 2011). The inquiry is whether the company's explanation is phony, and not whether the policy or action is reasonable or fair or the "best business practices." *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010). It is clear from reading plaintiff's deposition that she believed her supervisor was being overly strict on February 6th and was not listening to her explanation, which she thought was reasonable. Plaintiff thought it was a better decision, given her lack of sleep, to postpone the yearly ride but that she still was able to perform her normal supervisory work without taking a sick day. This may be true in some abstract sense. But our role is not to debate a company's priorities but instead to ascertain whether the company's rules and policies were honestly applied. There is no objective evidence to suggest that the company did not normally enforce this rule or that it viewed what plaintiff did as nothing important. Plaintiff has not pointed to similarly situated males who were treated better. In fact, UPS submitted evidence showing that other male supervisors who in the past refused to pull a load were *all terminated* as a result. (Def. Fact 31, 33.) In other words, plaintiff received a milder punishment (denial of a bonus) than the comparable men received (termination). For all the above reasons, we grant summary judgment to defendant on the bonus claims. We therefore need not address defendant's additional arguments, such as its assertion that the denial of a discretionary bonus cannot as a matter of law constitute an adverse action under Title VII. *See, e.g., Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).

**The Hostile Environment Claim.** Plaintiff's third allegation is really a grab-bag of smaller complaints, such as having several sexist comments directed towards her, being excluded from meetings and after-work drinks at a bar, working longer hours, among other things. As noted above, she does not analyze her claim under the hostile environment standard, but instead relies on the *McDonnell-Douglas* indirect burden-shifting framework. Under either standard, plaintiff's claim does not survive summary judgment.

To begin with, plaintiff has not responded to the many specific arguments UPS made in its opening brief regarding each of the specific allegations making up the hostile environment claim (which arguments included that the claims were outside the 300-day limitations period, were unsupported by the evidence, or were not actionable as a matter of law). Rather than addressing these arguments, plaintiff merely lists all her individual complaints in a single, summary paragraph on the last page of her brief and then conclusory states that she believes they add up to a hostile environment. She apparently assumes that the allegations are self evident.

However, simply pointing to rude or unfair behavior is not enough. As the Seventh Circuit has repeatedly stated, Title VII is not "a general civility code" and occasional abusive language is not enough to hold the company liable. *Vance v. Ball State Univ.*, 646 F.3d 461, 472 (7th Cir. 2011). "To be actionable, harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005). For this reason, the Seventh Circuit has focused on whether the alleged harassment was frequent, severe, or physically threatening. *Id.* Second, pointing to "unkind or aggressive conduct" on the part of a supervisor is not enough; a plaintiff must also show that the behavior was motivated by discriminatory bias. *Vance*, 646 F.3d at 470.

Given that plaintiff has not attempted to rebut the specific arguments defendant made in its opening brief (at pp. 4-8), we will not address every single argument but will instead address the more significant ones.

| STATEMENT |
|---|

Plaintiff has alleged she was excluded from weekly business meetings by Feeder manager Russell Kess. But the undisputed facts show that these meetings were open to all supervisors who could attend and that plaintiff attended some of them. Moreover, while plaintiff missed some of the meetings, other supervisors did so as well. Plaintiff alleges that two supervisors after work went to Hanson's bar for drinks without plaintiff. The undisputed facts, however, show that plaintiff was asked to join them but she chose not to go. Plaintiff alleges that she worked more hours than male supervisors. But UPS has shown that supervisor Kess allowed his supervisors to schedule their own work hours most of the time and did not keep track of hours worked. Plaintiff concedes this point but then offers her own assessment that she was "at work an awful lot" and believes that she worked more than Moreno and Godawa. This recollection is too vague, by itself, to establish that she worked more hours. While it is possible that plaintiff worked more hours, she has simply not corroborated her allegations with objective evidence. It is easy for an employee, who may not be aware of exactly when and how much other employees worked, to believe that he or she is working an unfair share.

     Plaintiff also complains about three sexist comments made in the workplace. First, sometime in late 2007, she was in the office and noticed that other workers had gotten Starbucks coffee without inviting her whereupon Godawa allegedly said "I'll share my whip cream with you," which plaintiff interpreted as a sexual reference. Second, in December 2007, plaintiff was outside in the rain one night. The next day Godawa allegedly remarked: "I would have taken you down to Hanson's for a wet T-shirt context." Third, plaintiff heard from drivers that Moreno had said (when plaintiff was not around) that women should not be in charge because they go crazy once per month. These comments fail to constitute a hostile environment. Three comments, one of which is inadmissible hearsay, over a several month period are not enough. They are not frequent nor large in number, nor are they physically threatening. They do not rise to the level that the Seventh Circuit requires to create a hostile environment. *See, e.g. Raciot v. Wal-Mart Stores*, 414 F.3d 675, 676-78 (7th Cir. 2005) (affirming summary judgment to the employer and holding that workplace comments such as calling plaintiff a "fucking bitch" were limited in number and were "more reflective of run of the mill uncouth behavior" rather than a hostile environment); *Patt v. Family Health Systems, Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (co-worker's comments such as "the only valuable thing to a woman is that she has breasts and a vagina" were isolated and thus did not constitute a hostile environment).

     In conclusion, for the reasons stated above, and for the additional reasons set forth in UPS's opening and reply briefs, we grant summary judgment to UPS on plaintiff's Title VII claim.